IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

RAMON CANTERO FRAU

    Debtor

CASE NO. 09-11136 (ESL)

CHAPTER 7

OPINION AND ORDER

This case is before the court upon the Chapter 7 Trustee's *Motion for Summary Judgment* (Docket No. 133) and the *Opposition* thereto (Docket No. 143) filed by creditor Diana Rengel Chardón ("Rengel"). Also before the court are Rengel's *Motion for Summary Judgment* (Docket No. 134) and the Chapter 7 Trustee's *Opposition* thereto (Docket No. 142). Rangel asserts to be priority domestic support order ("DSO") creditor under 11 U.S.C. §§ 507(a)(1)(A) and is therefore entitled to distribution although her proof of claim was untimely filed under 11 U.S.C. § 726(a)(1). The Chapter 7 Trustee contends that Rengel's claim is not a DSO, but rather constitutes the payment of her share in the liquidation of the conjugal partnership with her ex-husband, the Debtor, and hence, Rengel is barred from distribution. For the reasons stated below, the Chapter 7 Trustee's *Motion for Summary Judgment* (Docket No. 133) is hereby granted and Rengel's *Motion for Summary Judgment* (Docket No. 134) is hereby denied.

Procedural Background

The Debtor filed a voluntary Chapter 7 bankruptcy petition on December, 29, 2009 with its corresponding schedules. See Docket No. 1.

The bar date for creditors to file proofs of claims and to file complaints objecting to discharge or to determine the dischargeability of certain debts was set for April 26, 2010. See Docket No. 4.

On June 9, 2010, the Chapter 7 Trustee filed a *Complaint* in Adversary Proceeding No. 10-00096 against Rengel seeking the turnover to the bankruptcy estate of certain pieces of art

-1-

and other property given to her by the Debtor in payment of an alleged debt of \$125,000.00 recognized by him in a letter dated June 2, 2008. See Docket No. 142, Exhibit A, pp. 1-10.

On March 4, 2011, the Debtor filed an *Urgent Renewed Motion Requesting Issuance of Discharge* (Docket No. 52). The motion was granted on the same day (Docket No. 53).

On December 7, 2011, Rengel filed *Proof of Claim No. 13* claiming a priority DSO debt in the amount \$219,110.00 under 11 U.S.C. §507(a)(1)(A). See Claims Register No. 13.

On September 9, 2012, the Rengel filed an *Answer to Complaint* in Adv. Proc. No. 10-00096 presented the following affirmative defenses:

> In a distribution in chapter 7 by plaintiff trustee, [Rengel] as a [11 U.S.C.] § 507(a)(1)(A) is ranked preferentially as a DSO claimant owed over \$200,000 to the date of the petition, to be paid prior or pro rated with the administrative expenses of the trustee ranked at §507(a)(C) below DSO claimants.
>
> …
>
> In an eventual distribution by plaintiff trustee of property liquidated in this estate, [Rengel] as a [11 U.S.C.] §507(a)(1)(A) DSO claimant is ranked preferentially in any distribution with a DSO claim of over \$200,000 as of the date of the petition, with preference over any other claimant in the estate. Consequently [Rengel] cannot be shown at this time to have received in the transfer more than she will receive in any distribution in the chapter 7 estate.
>
> …
>
> Trustee has failed to specifically and particularly allege how the transfer has resulted in preferential treatment or payment to [Rengel], since she is a [11 U.S.C.] § 507(a)(1)(A) DSO claimant and will presumably receive 100% of her claim and/or 100% of the funds for distribution of this estate.

See Docket No. 142, Exhibit B, pp. 4 and 8, ¶¶ 23, 50 and 55.

On October 11, 2012, the Chapter 7 Trustee filed an *Objection to Proof of Claim #13 and Notice and Opportunity for Hearing* (Docket No. 85) arguing that Rengel's Proof of Claim was untimely because it was filed after the bar date.

On December 16, 2012, Rengel filed an *Opposition to C[hapter] 7 Trustee's Objection to Claim #13* (Docket No. 97) contending that her *Proof of Claim No. 13* was properly filed as a DSO claim and therefore should be given preferential treatment upon distribution. She further argues that the interplay between 11 U.S.C. §§ 507(a)(1)(A) and 726(a)(1) entitles her to distribution even if her proof of claim was untimely filed.

-2-

On December 20, 2012, the Chapter 7 Trustee filed a *Motion Requesting Approval of Compromise with Defendant Diana Rengel Chardon* in Adv. Proc. No. 10-00096 requesting that the court approve the *Settlement Agreement* reached by the parties.  See Adv. Proc. No. 10-00096 Docket No. 54.  Through that *Settlement Agreement*, the Chapter 7 Trustee and Rengel stipulated that the pieces of art constitute property of the bankruptcy estate, that the artwork would be sold by the Chapter 7 Trustee, and that the Chapter 7 Trustee "shall pay [Rengel] ten (10%) percent of the net proceeds from the sale, after deduction of all sale costs and trustee's fees" (Docket No. 54, Exhibit C, p. 2, ¶ 1(a), and p. 4, ¶¶ 1(d) and 1(e)).  The parties further stipulated as follows:

> In consideration of the terms and condition of this *Settlement Agreement*, and the benefits provided herein, Rengel hereby releases and forever discharges Trustee and the estate from any and all past, present or future claims, demands, obligation, actions, causes of action, claims, rights, damages, cost, liabilities, expenses and compensation of any kinds or nature whatsoever, whether based on a judgment, tort, contract, statue, or any other theory of recovery, and whether known or unknown to [her], from the beginning of time to the date hereof, on account of, or which may, in any way, arise out of, or be in any manner related to any allegations made or which could have been made in this matter.

See Docket No. 142, Exhibit C, p. 4, ¶ 2(a).

On January 24, 2012, the court issued an *Order* approving the *Settlement Agreement* (Adv. Proc. No. 10-00096 Docket No. 56) and a *Judgment* was entered on February 9, 2012 to that effect (Adv. Proc. No. 10-00096 Docket No. 59).  The *Judgment* was not appealed.

On January 14, 2013, the Chapter 7 Trustee filed an *Amended Objection to Proof of Claim #13 and Notice of Opportunity for Hearing* (Docket No. 98) reiterating that Rengel's *Proof of Claim No. 13* is untimely and that Rengel's credit is not a DSO claim, but rather constitutes the payment of her share in the liquidation of the conjugal partnership with her ex-husband, the Debtor.

On April 29, 2013, the court held a hearing where it determined as an uncontested fact that Rengel filed her proof of claim after the bar date and that there are not sufficient funds to pay all claims in full.  See Docket Nos. 112 (*Audio File*) and 113 (*Minute Entry*).

On May 8, 2013, the Chapter 7 Trustee filed a *Second Amended Objection to Proof of Claim No. 13* (Docket No. 115) sustaining that Rengel had full knowledge of the bar date and that she still filed her *Proof of Claim No. 13* almost a year and a half after the bar date. The Chapter 7 Trustee also argues that Rengel's credit is not a DSO claim and that "the $5,500 monthly payments to be made by Debtor [to her] under the terms of the divorce petition was in reality part of the payments for her share of the conjugal assets but that he had used the name 'alimony' so that he could deduct the payments in his tax return" (Docket No. 115, p. 5). The Chapter 7 Trustee avers that since the obligation is not a DSO, then 11 U.S.C. § 726(a)(2) is inapplicable. See Docket No. 115, p. 6. In the alternative, the Chapter 7 Trustee contends *in arguendo* that even if *Proof of Claim No. 13* constitutes a DSO claim, it should still be either disallowed in full pursuant to the marshalling of assets doctrine or be equitably subordinated to the full payment of other unsecured claims. See Docket No. 115, p. 7.

On May 8, 2013, the Chapter 7 Trustee filed a *Motion for Leave to File Spanish Exhibits* (Docket No. 116) and to withhold the filing of the translations until trial, if so needed, in order to not incur in potentially unnecessary expenses to the bankruptcy estate. The court granted the *Motion* as unopposed on June 7, 2013. See Docket No. 117.

On June 10, 2013, Rengel filed an *Answer to C[hapter] 7 Trustee's Amended Objection to Claim* insisting that her *Proof of Claim* is a DSO claim and as such, even if it was untimely filed, she is still entitled to distribution under 11 U.S.C. § 726(a)(1)(A) & (B). See Docket No. 119, p. 1. Rengel also sustains that the marshalling of assets doctrine and the equitable subordination of the claims are inapplicable to the instant case. See Docket No. 119, p. 2. She concludes that her *Proof of Claim* should be considered timely filed since there has been no distribution to date. Rengel further asserts that her claim "should not be subordinated or prorated under any other claim, except for a timely support claim other than hers" (Docket No. 119, p. 4).

On September 6, 2013, the parties filed a *Joint Proposed Pretrial Report* (Docket No. 123) containing certain stipulations of facts and the issues of fact in controversy.

On September 13, 2013, the court held a hearing (Docket Nos. 126 (*Minute Entry*), 128 (*Audio File*) and 131 (*Transcript*)).  The court reasoned that if Rengel's claim is not a DSO but a property settlement instead, then it does not come within the province of 11 U.S.C. § 726(a)(1), which governs the exceptions for filing an untimely proof of claim.  Conversely, if Rengel's claim is for a DSO, then the late failing of her *Proof of Claim* can be found to be timely under Section 726(a)(1).  See Docket No. 131, p. 7.  Hence, after considering the legal arguments of the parties, the court afforded forty five (45) days to file cross motions for summary judgment and fourteen (14) to file replies.

On November 1, 2013, the Chapter 7 Trustee filed a *Motion for Summary Judgment* (Docket No. 133) claiming that Rengel is judicially *estopped* from changing her position.  The Chapter 7 Trustee argues that during Rengel's deposition, she "clearly admitted that the monthly payments to be made by [the D]ebtor under the terms of the [divorce] Petition in reality are a part of the payment for her share of the conjugal assets but that they had labeled them as 'alimony' so that Mr. Cantero could also deduct those payments in his tax returns" and hence that she "is now estopped from changing her position in order to obtain the allowance of her late-filed claim" (Docket No. 133, p. 11).

On November 1, 2013, Rengel filed her *Motion for Summary Judgment* (Docket No. 134) sustaining that the court should apply the 10 point test established in In re Efron, 495 B.R. 166, 175 (Bankr. D.P.R. 2013), to determine if the obligation truly rises from a DSO.  Rengel restates that although her *Proof of Claim* was filed after the bar date, she is still entitled to distribution since her claim arises from a DSO, which should be given priority over other timely filed proof of claims.  She included in her *Motion* an *Unsworn Declaration Under Penalty of Perjury* stating that her *Proof of Claim* does not include "any other debts owed to [her] from [her] former spouse, [the Debtor], except that owed to [her] in back alimony" (Docket No. 134, p. 22).

On November 20, 2013, the Chapter 7 Trustee filed an *Opposition to Claimant's Cross Motion for Summary Judgment* (Docket No. 142) arguing that not only is Rengel estopped by

her own deposition, but she is also judicially estopped from changing her position in light of the *Settlement Agreement* reached and filed in Adv. Proc. 10-00096. The Chapter 7 Trustee also argues that the *Unsworn Declaration Under Penalty of Perjury* attached to Rengel's *Motion for Summary Judgment* (Docket No. 134, pp. 21-22) should be been stricken since it does not dispute an actual issue of fact and rather constitutes a "sham affidavit". See Docket No. 142, p. 4.

On November 20, 2013, Rengel filed an *Opposition to Trustee's Cross Motion for Summary Judgment* (Docket 143) asseverating that her claim meets the Efron standard for alimony. She also asserts she is a lay person and that her alleged "admissions" in her deposition cannot not be considered to determine if the payments by the Debtor constitute alimony or not. See Docket No. 143, pp. 7-8.

Jurisdiction

The court has jurisdiction over the instant contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(B).

Legal Analysis and Discussion

*(A) Standard for Summary Judgment*

Fed. R. Civ. P. 56, applicable in bankruptcy proceedings through Fed. R. Bankr. P. 7056, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also In re Colarusso, 382 F.3d 51 (1st Cir. 2004), citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d, Vol 10A, § 2712 (2013). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain

relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. at 202-203. Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. Id. at 205-206.

Summary judgment is warranted where, after adequate time for discovery and upon motion, a party fails to make a showing sufficient to establish the existence of an element essential to its case and upon which it carries the burden of proof at trial. Celotex, 477 U.S. at 322. The moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(c).

For there to be a "genuine" issue, facts which are supported by substantial evidence must be in dispute, thereby requiring deference to the finder of fact. Furthermore, the disputed facts must be "material" or determinative of the outcome of the litigation. Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976). When considering a petition for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 473 (1962); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988).

The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970). See also López v. CorporaciónAzucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir. 1991). It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. Bias v. Advantage International, Inc., 905 F.2d 1558, 1560-61 (D.C. Cir. 1990), cert. denied, 498 U.S. 958 (1990).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. Celotex, 477 U.S. at 325. Also see Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its

opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. Kennedy v. Josepthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987).Also see Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464.  A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party.  Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980).

The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made.  López, 938 F.2d at 1517.  The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden.  Adickes, 398 U.S. at 159.

*(B)*     *Res Judicata*

Although the Chapter 7 Trustee centers its arguments on judicial *estoppel,* "a court on notice that it has previously decided an issue may dismiss the action *sua sponte*, consistent with the *res judicata* policy of avoiding judicial waste."  In re Medomak Canning, 922 F.2d 895, 904-905 (1st Cir. 1990).  Also see United States v. Sioux Nation of Indians, 448 U.S. 371, 432, (1980) (Rehnquist, J., dissenting); Holloway Construction Co. v. United States Department of Labor, 891 F.2d 1211, 1212 (6th Cir.1988); Commissioner v. Sunnen, 333 U.S. 591, 597 (1948).

"*Res judicata* makes a valid final judgment conclusive on the parties ... and prevents relitigation of all matters that were or could have been adjudicated in the action.  This doctrine is sometimes known as 'merger and bar', nomenclature that emphasizes the doctrine's role in guarding against claim splitting."  Andrew Robinson Int'l, Inc. v. Hartford Fire Insurance Co., 547 F.3d 48, 52 (1st Cir. 2008) (citations omitted).  "The doctrine of *res judicata*, now called claim preclusion, forecloses litigation of all matters which have been litigated or might have been litigated in an earlier case.  The rule of collateral estoppel, now termed issue preclusion, precludes re-litigation of issues actually adjudicated."  Suarez Cestero v. Pagan Rosa, 198 F.

Supp. 2d 78, 84 (D.P.R. 2002), citing 18 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction, § 4402. It incorporates the concept of "merger and bar (or claim preclusion)," which "prevents a party from asserting a claim previously decided on the merits by a final judgment in another case between the same parties (or their privies): the re-asserted claim is deemed 'merged' into the prior judgment if the plaintiff had won or 'barred' by it if the plaintiff had lost." AVX Corp. v. Cabot Corp., 424 F.3d 28, 30 (1st Cir. 2005).

The Court of Appeals for the First Circuit (the "First Circuit") has described *res judicata* as follows:

> Federal law determines whether an earlier judgment, rendered in a federal court, bars the maintenance of a subsequent federal court action. Under federal law, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). Thus, the elements of a *res judicata* defense are (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions.

> In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003) (citation omitted).

In Adv. Proc. No. 10-00096, Rengel herself put into controversy her DSO claim when she made the following allegations:

> In a distribution in chapter 7 by plaintiff trustee, [Rengel] as a [11 U.S.C.] § 507(a)(1)(A) is ranked preferentially as a DSO claimant owed over $200,000 to the date of the petition, to be paid prior or pro rated with the administrative expenses of the trustee ranked at §507(a)(C) below DSO claimants.
> …
> In an eventual distribution by plaintiff trustee of property liquidated in this estate, [Rengel] as a [11 U.S.C.] §507(a)(1)(A) DSO claimant is ranked preferentially in any distribution with a DSO claim of over $200,000 as of the date of the petition, with preference over any other claimant in the estate. Consequently [Rengel] cannot be shown at this time to have received in the transfer more than she will receive in any distribution in the chapter 7 estate.
> …
> Trustee has failed to specifically and particularly allege how the transfer has resulted in preferential treatment or payment to [Rengel], since she is a [11 U.S.C.] § 507(a)(1)(A) DSO claimant and will presumably receive 100% of her claim and/or 100% of the funds for distribution of this estate.

-9-

See Docket No. 142, Exhibit B, pp. 4 and 8, ¶¶ 23, 50 and 55.

In the *Settlement Agreement* filed in Adv. Proc. No. 10-00096, Rengel stipulated that the pieces of art in controversy constituted property of the bankruptcy estate, that the artwork would be sold by the Chapter 7 Trustee, and that the Chapter 7 Trustee "shall pay [Rengel] ten (10%) percent of the net proceeds from the sale, after deduction of all sale costs and trustee's fees" (Docket No. 54, Exhibit C, p. 2, ¶ 1(a), and p. 4, ¶¶ 1(d) and 1(e)).  The parties' intent to enter into the *Settlement Agreement* was also stipulated as follows:

> In consideration of the terms and condition of this *Settlement Agreement*, and the benefits provided herein, Rengel hereby releases and forever discharges Trustee and the estate from any and all past, present or future claims, demands, obligation, actions, causes of action, claims, rights, damages, cost, liabilities, expenses and compensation of any kinds or nature whatsoever, whether based on a judgment, tort, contract, statue, or any other theory of recovery, and whether known or unknown to [her], from the beginning of time to the date hereof, on account of, or which may, in any way, arise out of, or be in any manner related to any allegations made or which could have been made in this matter.

See Docket No. 142, Exhibit C, p. 4, ¶ 2(a).

Pursuant to the *Settlement Agreement*, on January 24, 2012, the court issued an *Order* approving it (Adv. Proc. No. 10-00096 Docket No. 56) and a *Judgment* to that same effect was entered on February 9, 2012 (Adv. Proc. No. 10-00096 Docket No. 59).

The court finds that the three-prong for *res judicata* test is met in the instant case.  There is a final *Judgment* approving a *Settlement Agreement* filed by the parties (Adv. Proc. No. 10-00096 Docket No. 59), which satisfies the first prong.  In addition, the contested matter involves the same parties both in Adv. Proc. No. 10-00096 as in the instant case, to wit, the Chapter 7 Trustee and Rengel.  Hence, the third prong is also met. See In re Colonial Mortgage Bankers Corp., 324 F.3d at 16.

As to the second prong, *i.e.*, whether there is sufficient identicality between Rengel's DSO claim in Adv. Proc. No. 10-00096 and in the instant case, the First Circuit has adopted a "transactional" approach to determine whether causes of action are sufficiently related to

-10-

support a *res judicata* defense. See Andrews-Clarke v. Lucent Techs., Inc., 157 F. Supp. 2d 93, 102 (D. Mass. 2001), citing Iannochino v. Rodalakis, 242 F.3d 36, 41 (1st Cir. 2001). Under this approach, a valid and final judgment in a first action will extinguish subsequent claims with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. "As long as the new complaint grows out of the same transaction or series of connected transactions as the old complaint, the causes of action are considered to be identical for *res judicata* purposes." Havercombe v. Dept. of Educ. of the Comm. of P.R., 250 F.3d 1, 4 (1st Cir. 2001). The court determines the factual grouping which constitutes a "transaction" pragmatically, giving weight to such factors as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations. See Aunyx Corp. v. Canon U.S.A., Inc., 978F.2d 3, 6 (1st Cir. 1992); Massachusetts Sch. of Law v. ABA, 142 F.3d 26, 38 (1st Cir. 1998). The motivation in the *Settlement Agreement* is clear: Rengel bargained her chances of prevailing in Adv. Porc. No. 10-00096 in exchange for ten percent (10%) of the proceeds from the sale of the works of art claimed in that case. See Docket No. 142, Exhibit C, p. 3. Rengel also released the Chapter 7 Trustee and the bankruptcy estate from "any and all past, present or future claims, demands, obligation, actions, causes of action, claims, rights, damages, cost, liabilities, expenses and compensation of any kinds or nature whatsoever, whether based on a judgment, tort, contract, **statue, or any other theory of recovery**, and whether known or unknown to [her], from the beginning of time to the date hereof, on account of, or **which may, in any way, arise out of, or be in any manner related to any allegations made or which could have been made in this matter**" (Docket No. 142, Exhibit C, p. 4, ¶ 2(a), emphasis added). The court finds that such broad release includes her DSO claim filed on December 7, 2011 (Claims Register No. 13). Therefore, the second prong for *res judicata* is also met.

*(C)    Contracts of Compromise and Pacta Sunt Servanda*

The *Settlement Agreement* between the Chapter 7 Trustee and Rengel contains the following "governing law" provision:

Governing Law

This Agreement shall be deemed to have been made in, and shall be construed in accordance with, the laws of the Commonwealth of Puerto Rico. This Agreement shall not be construed against the party on behalf of which it was drafted solely because of the fact that counsel to such party drafted it. This Settlement Agreement was drafted jointly and shall not be construed against any party by reason of its drafting or preparation. (Docket No. 142, Exhibit C, p. 5, ¶ 3).

Article 1709 of the Civil Code of Puerto Rico defines a settlement agreement or "contract of compromise" as "a contract by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted." 31 L.P.R.A. § 4821. Contracts of compromise are consensual, bilateral and onerous. See US Fire Ins. Co. v. A.E.E., 170 D.P.R. 846, 853 (2008). Through them, the parties settle a certain controversy with the purpose of avoiding the burdens of litigation. See Q. M. Scaevola, Código Civil, Volume XXVIII, Instituto Editorial Reus, Madrid, 1953, pág. 246. They are "consensual, mutually binding contract[s], with a subjective consideration, having a determinant or declaratory effectiveness, through which the parties exercise their discretion to, via mutual waivers and releases, and sometimes complementary payments, settle a justiciable legal controversy." Citibank, N.A. v. Dependable Insurance Co., Inc., 21 P.R. Offic. Trans. 496, 504-505 (1988), quoting A. Moxo Ruano, Notas sobre la naturaleza de la transacción, 34 Rev. Der. Priv. 673 (1950).

A "contract of compromise" requires: (1) a controversy or uncertain judicial relationship that represents the probability of litigation or an existing one; (2) the parties' intent to substitute the uncertainty of the controversy with the certainty of an uncontested relationship; and (3) reciprocal concessions of the parties. See U.S. Fire Ins. Co. v. A.E.E., 170 D.P.R. at 853-854. In the instant case, the *Settlement Agreement* meets the requirements for a "contract of compromise" under Article 1709 of the Civil Code of Puerto Rico.

A judicial stipulation between litigants to terminate court action constitutes a "contract of compromise" pursuant to Article 1709 of the Civil Code of Puerto Rico. See Díaz Torres v.

Rivera, 96 P.R.R. 448, 552, 96 D.P.R. 560, 564 (1968).  Moreover, a stipulation subscribed to by the parties and accepted by the court, that finalizes a lawsuit, constitutes a "contract of compromise" that obligates the parties.  Crespo Cardona v. Autoridad de Carreteras, 136 D.P.R. 938, 946 (1994).  "A compromise or settlement agreement is binding and enforceable, and has the same authority of *res judicata;* the parties must consider the points discussed to be definitely resolved and cannot go over them again."  Torres v. Gotay (In re Empresas Inabon, Inc.), 358 B.R. 487, 524 (Bankr. D.P.R. 2006).  Notwithstanding, even though a settlement agreement has *res judicata* effect as to the matters addressed therein, it does not impede the court from considering its extent and application to a legal proceeding where it has been raised as a defense.  See Citibank, 21 P.R. Offic. Trans. at 510.  Settlement agreements should be interpreted restrictively.  U.S. Fire Ins. Co. v. A.E.E., 170 D.P.R. at 855; Blas Toledo v. Hospital Nuestra Señora de la Guadalupe, 167 D.P.R. 439, 450 (2006).  Settlement agreements should be interpreted in accordance with the general rules of contract interpretation, pursuant to which the settlement contract should not be understood to include things that were not intended by the parties to be included and, further, if the terms are clear, they should be literally applied. Id. at 12.  Finally, to discern the intent of the parties, the court should consider the parties' actions before, during and after the settlement contract, as well as any other circumstances which indicate their volition.  Id.  Hence, because the *Settlement Agreement* is governed by Puerto Rico law, Rengel is also bound to the principle of *pacta sunt servanda* arising from Article 1044 of the Civil Code of Puerto Rico, *infra*, which holds parties to strict compliance with the terms of their bargain.  Article 1044 of the Civil Code of Puerto Rico provides that "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." 31 L.P.R.A. § 2994.  Moreover, Article 1233 of the Civil Code of Puerto Rico provides that "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.  If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail." 31 L.P.R.A. § 3471.  The court finds that the terms and intentions

of the parties in the *Settlement Agreement* are clear and Rengel has not otherwise alleged. Furthermore, the court also notes that Rangel did not contest, question or dispute in her motions the effects of *Settlement Agreement* in the instant case.

### Conclusion

In view of the foregoing, the Chapter 7 Trustee's *Motion for Summary Judgment* (Docket Nos. 133 and 144) is hereby granted and Rengel's *Motion for Summary Judgment* (Docket No. 134) is hereby denied.

Judgment shall be entered accordingly.

SO ORDERED.

In San Juan, Puerto Rico, this 14th day of April, 2014.

Enrique S. Lamoutte
United States Bankruptcy Judge

-14-